**IN THE  UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DENISE ROBINSON and DAVID STIGALL, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| vs. | |
| WALGREEN CO., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

1.      This is a putative class action on behalf of Plaintiffs Denise Robinson and David Stigall ("Plaintiffs''), and all others similarly situated, against Defendant Walgreen Co. ("Walgreens" or "Defendant").

## NATURE OF THE CASE

2.      Defendant is one of the largest drugstore chains in the United States, with more than 8,200 stores in all 50 states. Defendant markets, advertises, and sells various products, including, but not limited to pain reliever and fever reducers, to consumers.

3.      Defendant distributes its own brand of pain reliever and fever reducer under the "*Walgreens*" label, including Infants' Dye-Free Pain & Fever Acetaminophen - *Walgreens* ("Infants' Products") and Children's Dye-Free Pain & Fever Acetaminophen - *Walgreens* ("Children's Products"), two well-known brand-name Over The Counter ("OTC") medications. The Infants' Products and Children's Products are collectively hereinafter referred to as the "Products."

4.     Acetaminophen, the active ingredient in the Products, can be dangerous, and perhaps even fatal, if taken in large doses. The potential risks associated with an acetaminophen overdose terrifies parents and caregivers and causes them to be extra careful when buying medicine for their children. Defendant exploits this fear by misleading consumers.

5.     It is the manner in which Defendant markets, prices, and sells the Products in its brick-and mortar retail stores that forms the underlying basis for this action.

6.     Defendant's advertisements, marketing representations, and placement of the Products in its stores are misleading, untrue, and likely to deceive reasonable consumers. Defendant purposely packages Infants' Products with distinctive bright yellow lettering of the word "infants'" on the product's front-label, while packaging Children's Products with distinctive bright yellow lettering of the word "Children's" on the product's front-label. Accordingly, Defendant distributes, markets, and sells the Products in a manner which deceives reasonable consumers into thinking that infants cannot safely take Children's Products.

7.     Furthermore, despite the fact that the Products contain the same exact amount of acetaminophen in the same dosage amounts, Defendant markets and sells Infants' Products to consumers, such as Plaintiffs, at a substantially higher price than Children's Products. In stores, the Infants' Products cost approximately three times as much per ounce than Children's Products for the same amount of medicine.

8.     No reasonable consumer would pay approximately three times more for Infants' Products, as compared to Children's Products, unless he or she was deceived into thinking that infants cannot safely take Children's Products.

## JURISDICTION AND VENUE

9.      Jurisdiction and venue are properly vested in this Court because Defendant has its principal place of business in Illinois, and a substantial portion of the acts, events, and/or failure to act giving rise to the claims alleged herein occurred in this judicial district. Additionally, Defendant has substantial business contacts with the State of Illinois, or otherwise avails itself of the markets within Illinois, through promotion, sale, marketing and distribution of the Products in Illinois, to render the exercise of jurisdiction by this Court proper and necessary.

10.      This action is brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (CAFA). Jurisdiction is vested in this Court in that there is minimal diversity and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) – (d) because, *inter alia*, Defendant resides in, and is subject to personal jurisdiction in, this judicial district at the time that Plaintiffs commenced this action and because Defendant's contacts within this judicial district is significant and sufficient to subject it to personal jurisdiction. Further, venue is appropriate in this judicial district because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

12.      At all relevant times, Plaintiff Denise Robinson has resided in Dixon, Illinois. Plaintiff first purchased the Infants' Product at the Walgreens store located at 1275 N. Galena Avenue, Dixon, Illinois 61021, and has been purchasing the Infants' Product for her now two (2) year old and five (5) year old children for approximately five (5) years.

13.      At all relevant times, Plaintiff David Stigall has resided in Dallas, Texas. Plaintiff first purchased the Infants' Products at the Walgreens store located at 11403 E Northwest Hwy,

Dallas, Texas 75218, and has been purchasing the Infants' Product for his now two (2) year old child for approximately two (2) years.

14.    Plaintiffs saw and relied upon the Infants' Products packaging and labeling.

15.    Plaintiffs purchased the Infants' Products because they believed that the Infants' Products were specifically formulated and designed for infants based on the marketing and labeling of the Infants' Products. Plaintiffs believed that the Infants' Products were different than the Children's Products. If Plaintiffs knew that the Infants' Products were nothing more than the Children's Products, they would not have purchased the Infants' Products or paid a price premium for the Infants' Products.

16.    Had Defendant not made the false, misleading, and deceptive representation that the Infants' Products were formulated and designed for "Infants," nor omitted the fact that the Infants' Products were nothing more than the Children's Products with the word "Infants" prominently displayed, Plaintiffs would not have been willing to pay the premium for the Infants' Products, or they would not have been willing to purchase the Infants' Products at all. Plaintiffs purchased and paid more for the Infants' Products than they would have if they had known the truth about the Infants' Products. The Infants' Products that Plaintiffs received were worth less than the Infants' Products for which they paid. Plaintiffs were injured in fact and lost money as a result of Defendant's deceptive conduct.

17.    Plaintiffs' desire to purchase "Infants'" products in the future and regularly visit retail locations where such products are sold. If Plaintiffs knew that the Infants' Products' labels were truthful and non-misleading, they would continue to purchase the Infants' Products in the future.

18.     At present, however, Plaintiffs cannot purchase the Infants' Products because they remain unsure whether the labeling of the Products is, and will be, truthful and non-misleading. If the Infants' Products were in fact different from the Children's Products, or if it were disclosed that the Infants' Products were the same as the Children's Products, Plaintiffs would purchase the Products in the immediate future, and they would be willing to pay a price premium if they were in fact specially formulated for infants.

19.     Defendant is a corporation incorporated under the laws of Illinois, and is a "person" as defined in 33 U.S.C. § 1362(5) and 40 C.F.R. § 122.2.

20.     Defendant is, and at all times mentioned in this Complaint, a corporation organized and existing under the laws of the State of Illinois with its principal place of business at 200 Wilmot Road, Deerfield, Illinois, 60015. Defendant conducts business in all fifty states of the United States, including this District. Defendant can sue and be sued in this Court.

## FACTUAL ALLEGATIONS

21.     Defendant distributes two different pediatric OTC painkillers—Infants' Products and Children's Products.

22.     Prior to the acts complained herein, liquid acetaminophen marketed for infants was only available in 80 mg/0.8 mL or 80 mg/mL concentrations, while liquid acetaminophen marketed for "children" was only available in 160 mg/5 mL concentrations.

23.     The difference in concentrations caused some consumers to accidentally provide the wrong dosage of medicine to their children, thereby causing them to overdose.

24.     Between 2000 and 2009, U.S. Food and Drug Administration (FDA) received reports of twenty (20) children dying from acetaminophen toxicity, and at least three (3) deaths were tied to mix-ups involving the two pediatric medicines.

25.     On December 22, 2011, the FDA informed the public that liquid acetaminophen marketed for infants would only be available in 160 mg/5 mL in order to prevent confusion and accidental acetaminophen toxicity.

26.     Since then, the only differences in liquid acetaminophen marketed for infants versus children has been the price and dosing instrument included with the product (*i.e.*, Defendant's Infants' Products come with a syringe while the Children's Products come with a plastic cup).

27.     The Products have the same 160 milligram concentration of acetaminophen, are interchangeable and therefore suitable for infants and children, adjusting the dosage based only on the weight and age of the child.

28.     Defendant has been engaging in the unfair, unlawful, deceptive, and fraudulent practice of manufacturing, marketing and selling the same product as two unique medicines, such that parents and caregivers mistakenly believe that they cannot purchase the significantly cheaper Children's Products for an infant.

29.     Defendant misleads consumers by using deceptive marketing techniques which obscure critical facts—including that infants can safely take Children's Products and that the Products are in fact exactly the same—from consumers nationwide

30.     Defendant deceives consumers so that they will buy the deceptively-labeled Infants' Products for infants, which cost significantly more than Children's Products, even though the Products contain the same exact amount of acetaminophen in the same dosage amounts.

31.     There are various conventions applied in sub-dividing the pediatric population by age. The FDA classification[1] for infants and children is as follows: infant (1 month to 2 years) and

---

[1] Guidance for Industry – General Considerations for Pediatric Pharmacokinetic Studies for
(footnote continued)

children (2 to 12 years).[2] Consumers may reasonably believe that a product that is labeled and marketed for consumption by infants should only be consumed by those between the ages of one (1) month to two (2) years old.

32.     Defendant distributes, markets, and sells the Products in a manner that deceives reasonable consumers into thinking that infants cannot safely take the Children's Products.

33.     Specifically, Defendant distinguishes the two products by calling one "infants'" and one "children's" in distinctive bright yellow lettering.

 

34.     Additionally, at the top right corner of the Infants' Products, Defendant states "Compare to Infants' Tylenol® Oral Suspension active ingredient" while the top right corner of the Children's Products states, "Compare to Children's Tylenol® Oral Suspension active ingredient." Through this wording, Defendant attempts to deceive reasonable consumers into believing that the active ingredient in Infant Tylenol® is *different* than the active ingredient in

---

Drugs and Biological products, Draft Guidance, US FDA, 10 November 1998.
[2] http://archives.who.int/eml/expcom/children/Items/PositionPaperAgeGroups.pdf (last visited March 25, 2020)

Children's Tylenol®, when it knows that the active ingredient is the same, further inducing reasonable consumers to purchase the more expensive Infants' Products.

 

35.     Defendant further misleads consumers by placing "Ages 2-3" on the Infants' Products. Despite the inclusion of an age range, reasonable consumers believe that a product specifically labeled "infants" is just that, for infants. And no reasonable consumer (as confirmed by FDA age classification, which confirms an infant is ages 1 month to 2 years) would believe that an "infant" is a 2 or 3 year old.

36.     Furthermore, despite the fact that the Products contain the same exact amount of acetaminophen in the same dosage amounts, Defendant markets and sells Infants' Products to consumers, such as Plaintiffs, at a substantially higher cost than the Children's Products. In stores, Infants' Products cost approximately three times as much per ounce over Children's Products for the same amount of medicine.

37.     Defendant knows that consumers, such as Plaintiffs, are typically more cautious about what medicine they give to infants, especially when they are giving their infant a product that has caused accidental deaths in the past.

38.     No reasonable consumer would be willing to pay more money—and certainly not three times as much per ounce—for Infants' Products unless he or she had good reason to believe that Infants' Products were different than or superior to the Children's Products.

39.     Indeed, Defendant's misrepresentations and omissions, as described above, would be important to a reasonable consumer in deciding whether to purchase Infants' Products.

## RULE 9(b) ALLEGATIONS

40.     Defendant made material misrepresentations and failed to adequately disclose that the Products are the same. Except as identified herein, Plaintiffs and Class members are unaware, and therefore, unable to identify, the true names and identities of those individuals at Defendant who are responsible for such material misrepresentations and omissions.

41.     Defendant made material misrepresentations regarding Infants' Products. Specifically, Defendant marketed, priced and sold Infants' Products in a manner to indicate to reasonable consumers that they are superior or somehow more appropriate for infants than Children's Products to justify charging the inflated price of Infants' Products. These representations were false and misleading because Infants' Products are the same as Children's Products.

42.     Defendant's advertising, in-store labeling, marketing, and placement of the Products contained the material misrepresentations, omissions, and non-disclosures continuously at every point of purchase and consumption throughout the Class Period.

43.     Defendant made numerous misrepresentations on the advertising, in-store labeling, marketing, and pricing of Infants' Products that were designed to, and, in fact, did, mislead Plaintiffs and the members of the Classes into purchasing Infants' Products.

44. Defendant made these material misrepresentations, omissions, and non-disclosures for the express purpose of inducing Plaintiffs and other reasonable consumers to purchase or otherwise pay a price premium for Infants' Products based on the belief that Infants' Products were specifically designed for infants and different from the identical Children's Products. Defendant profited by selling Infants' Products to thousands of unsuspecting consumers.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs seek to bring this action as a class action, under Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated.

46. Plaintiffs seek to represent the following class: All persons who purchased Infants' Products for personal use in the United States (the "Nationwide Class").

47. Plaintiff Denise Robinson also brings this suit as a class action on behalf of the following subclass: All persons who purchased Infants' Products, at Defendant's Illinois store locations, for personal use ("Illinois Subclass").

48. Plaintiff David Stigall also brings this suit as a class action on behalf of the following subclass: All persons who purchased Infants' Products, at Defendant's Texas store locations, for personal use ("Texas Subclass").

49. The following persons are excluded from the Nationwide Class, Illinois Subclass and Texas Subclass (collectively, the "Classes"): Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, assigns and successors. Also excluded are the judges to whom this case is assigned and any member of the judge's immediate family.

50. Plaintiffs reserve the right to re-define the Classes prior to class certification.

51. The Classes satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirement of Federal Rule of Civil Procedure 23(a) and (b)(3).

52. **Numerosity:** The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Although the precise number of members of the Classes is unknown to Plaintiffs at this time, on information and belief, the proposed Classes contain thousands of purchasers of Infants' Products who have been damaged by Defendant's conduct as alleged herein.

53. **Existence and Predominance of Common Questions of Law and Fact:** There are questions of law and fact common to the Classes. These questions predominate over individual questions because the actions of Defendant complained of herein were generally applicable to the Classes. These legal and factual questions include, but are not limited to:

a. Whether Infants' Products and Children's Products are the same;

b. Whether Defendant knew or should have known that Infants' Products and Children's Products are the same;

c. Whether Defendant's conduct and/or omissions in its marketing, pricing and selling the Infants' product in the manner discussed herein indicated to the members of the Classes that Infants' Products were superior or somehow more appropriate for infants than Children's Products;

d. Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

e. Whether Defendant's labeling, marketing, and the sale of Infants' Products constitute false advertising;

f.      Whether Defendant's conduct injured Plaintiffs and the Classes and, if so, the extent of the damages; and

g.      The appropriate remedies for Defendant's conduct.

54.     All questions as to the representations and publicly disseminated advertisements and statements attributable to Defendant at issue herein are similarly common. A determination of Defendant's knowledge regarding the misleading and deceptive nature of the statements made in its website, advertisements, and labels will be applicable to all members of the Classes. Further, whether Defendant violated any applicable state laws and pursued the course of conduct complained of herein, whether Defendant acted intentionally or recklessly in engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages and restitutionary relief are common questions to the Classes.

55.     **Typicality:** Plaintiffs' claims are typical of the Classes because Defendant injured all members of the Classes through the uniform misconduct described herein; all members of the Classes were subject to Defendant's false, misleading, and unfair marketing practices and representations, including the false and misleading claim that Infants' Products were different from Children's Products warranting a premium price; and Plaintiffs seek the same relief as the members of the Classes.

56.     Further, there are no defenses available to Defendant that are unique to the Plaintiffs.

57.     **Adequacy of Representation:** Plaintiffs are a fair and adequate representative of the Classes because their interests do not conflict with the interests of the members of the Classes. Plaintiffs will prosecute this action vigorously and are highly motivated to seek redress against Defendant. Further, Plaintiffs have selected competent counsel that is experienced in class action

and other complex litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the resources to do so.

58. **Superiority:** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

a. The damages individual members of the Classes suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

b. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if they could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudications, economies of scale, and comprehensive supervision by a single court.

c. The prosecution of separate actions by the individual members of the Classes would create a risk inconsistent or varying adjudications with respect to individual members of the Classes members, which would establish incompatible standards of conduct for Defendant.

d. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to adjudications or that would substantively impair or impede their ability to protect their interests.

59. The claims of the Classes may be certified under Rule 23(b)(1), (b)(2) and/or (b)(3). The members of the Classes also seek declaratory and injunctive relief but also seek sizeable monetary relief.

## **FIRST CAUSE OF ACTION**

**Texas Deceptive Trade Practices
And Consumer Protection Act
Tex. Bus. & Com. Code § 17.41, *et seq.*
(On behalf of Plaintiff David Stigall and the Texas Subclass)**

60. Plaintiffs hereby incorporate paragraphs 1-59 as if fully set forth herein.

61. At all relevant times, Plaintiff David Stigall has resided in Dallas, Texas. Plaintiff David Stigall brings this cause of action on his own behalf and on behalf of the Texas Subclass.

62. Plaintiff David Stigall sent a demand for relief to Defendant, on behalf of the Texas Subclass, prior to the filing of this Complaint.

63. Plaintiff David Stigall and the Texas Subclass are "consumers," as defined in Tex. Bus. & Com. Code § 17.45(4).

64. Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Tex. Bus. & Com. Code § 17.46, in at least the following ways:

a. Defendant has violated and continues to violate Tex. Bus. & Com. Code § 17.46(b)(5) by representing to Plaintiff David Stigall and the Texas Subclass that

Infants' Products have sponsorship, approval, characteristics, ingredients, benefits or quantities which they do not have;

b.      Defendant has violated and continues to violate Tex. Bus. & Com. Code § 17.46(b)(9) by advertising Infants' Products to Plaintiff David Stigall and the Texas Subclass with the intent not to sell them as advertised.

c.      Defendant has violated and continues to violate Tex. Bus. & Com. Code § 17.46(b)(24) by failing to disclose to Plaintiff David Stigall and the Texas Subclass that Infants' Products and Children's Products are identical and that Children's Products are in fact suitable and safe for infants. Defendant's failure to disclose such information was intended to induce Plaintiff David Stigall and the Texas Subclass to purchase the more expensive Infants' Products, which they would not have purchased had the information been disclosed;

d.      Defendant deceptively advertised or intentionally omitted, suppressed, and/or concealed material facts in Infants' Products packaging, online materials, and commercials in violation of Tex. Bus. & Com. Code § 17.46(b)(5), (9), and (24) and § 17.50(d);

e.      Defendant has violated and continues to violate Tex. Bus. & Com. Code § 17.50(a)(2) and § 17.50(d), by breaching its express warranties about Infants' Products because they were nothing more than Children's Products with the word "infants" prominently displayed.

65.      The above unfair and deceptive practices and acts by Defendant were improper and unfair. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

66.     In marketing, advertising and labeling Infants' Products, Defendant made, and continues to make, false and misleading statements in order to induce consumers into purchasing Infants' Products on a false premise.

67.     In marketing, advertising and labeling Infants' Products, Defendant failed and continues to fail to make material disclosures, including a disclosure notifying consumers that Infants' Products is the same product as Children's Products.

68.     Defendant is aware that the claims that it makes about Infants' Products are false, misleading, without basis, and unreasonable.

69.     Defendant engaged in the deceptive conduct alleged above in order to induce the public to purchase the more expensive Infants' Products, instead of Children's Products.

70.     In marketing, advertising and labeling Infants' Products described above, Defendant knew or should have known that its statements regarding the uses and characteristics of Infants' Products were false and misleading.

71.     Defendant's misrepresentations of the material facts detailed above constitute deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Tex. Bus. & Com. Code § 17.46.

72.     Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein.

73.     All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a course of conduct repeated on hundreds, if not thousands, of occasions every day.

74.     Plaintiff David Stigall and the Texas Subclass were misled into purchasing Infants' by Defendant's deceptive conduct and misleading advertising as alleged above.

75.     Plaintiff David Stigall and the Texas Subclass were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that Infants' Products has benefits which it does not; namely that it is more suitable and safer for infants than the Children's Products.

76.     Additionally, Defendant's use of various forms of advertising and marketing have deceived and are likely to continue deceiving the consuming public, in violation of Tex. Bus. & Com. Code § 17.46.

77.     As a result of Defendant's wrongful conduct, Plaintiff David Stigall and the Texas Subclass have suffered injury in fact and have lost money. Indeed, Plaintiff David Stigall and the Texas Subclass purchased Infants' Products because of Defendant's misrepresentations that Infants' Products are a more suitable and safer OTC medicine for infants than Children's Products. Plaintiff David Stigall and the Texas Subclass would not have purchased Infants' Products if they had known that the advertising and representations as described herein were false.

78.     Plaintiff David Stigall and the Texas Subclass seek relief under Tex. Bus. & Com. Code § 17.50, including, but not limited to, economic damages, treble damages, injunctive relief, restitution, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### Illinois Consumer Fraud And Deceptive Business Practices Act
### 815 Ill. Comp. Stat. 505/1, *et seq.*
### (On behalf of Plaintiff Denise Robinson and the Illinois Subclass)

79.     Plaintiffs hereby incorporate paragraphs 1-59 as if fully set forth herein.

80.     Plaintiff Denise Robinson brings this cause of action on her own behalf and on behalf of the Illinois Subclass.

81. In Illinois, the Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et. seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act.'"

82. Plaintiff Denise Robinson and the Illinois Subclass were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Illinois Subclass. Because Plaintiff and the Illinois Subclass relied on Defendant's misrepresentations, concealments and omissions when purchasing Infants' Products, they were injured at the time of purchase.

83. Defendant does business in Illinois, sells and distributes Infants' Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of Infants' Products in Illinois and elsewhere in the United States.

84. The Infants' Products purchased by Plaintiff Denise Robinson and the Illinois Subclass were "consumer items" as that term is defined under the Illinois Consumer Fraud Act.

85. Defendant engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 505/2 when it misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Infants' Products, which has caused damage and injury to Plaintiff Denise Robinson and the Illinois Subclass at the time of purchase.

86.     Defendant represented, directly or indirectly, that Infants' Products were manufactured, developed, and designed to be used for infants, when it knew that the Children's Products were the same product, yet sold at a significantly lower cost.

87.     In marketing, advertising and labeling Infants' Products, Defendant made, and continues to make, false and misleading statements in order to induce consumers into purchasing Infants' Products on a false premise.

88.     In marketing, advertising and labeling Infants' Products, Defendant failed and continues to fail to make material disclosures, including a disclosure notifying consumers that Infants' Products is the same product as Children's Products.

89.     Defendant is aware that the claims that it makes about Infants' Products are false, misleading, without basis, and unreasonable.

90.     Defendant engaged in the deceptive conduct alleged above in order to induce the public to purchase the more expensive Infants' Products, instead of Children's Products.

91.     In marketing, advertising and labeling Infants' Products described above, Defendant knew or should have known that its representations and statements regarding the uses and characteristics of Infants' Products were false and misleading.

92.     Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described in this Complaint.

93.     All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a course of conduct repeated on hundreds, if not thousands, of occasions every day.

94.     Plaintiff Denise Robinson and the Illinois Subclass were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that Infants'

Products has benefits which it does not; namely that it is more suitable and safer for infants than the Children's Products.

95.     Additionally, Defendant's use of various forms of advertising and marketing have deceived and are likely to continue deceiving the consuming public, in violation of the Illinois Consumer Fraud Act.

96.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

97.     Defendant intended Plaintiff Denise Robinson and the Illinois Subclass to rely on their deceptive acts when purchasing Defendant's Infants' Products.

98.     Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff Denise Robinson and the Illinois Subclass at the time of purchase. As a result of Defendant's wrongful conduct, Plaintiff Denise Robinson and the Illinois Subclass have suffered injury in fact and have lost money. Indeed, Plaintiff Denise Robinson and the Illinois Subclass purchased Infants' Products because of Defendant's misrepresentations that Infants' Products are a more suitable and safer OTC medicine for infants than Children's Products.

99.     Plaintiff Denise Robinson and the Illinois Subclass would not have purchased, or would have paid less for, Defendant's Infants' Products but for Defendant's material misrepresentations as described in this Complaint.

### THIRD CAUSE OF ACTION
**Uniform Deceptive Trade Practices Act**
**815 Ill. Comp. Stat. 510/2, *et seq.***
**(On behalf of Plaintiff Denise Robinson and the Illinois Subclass)**

100.     Plaintiffs hereby incorporate paragraphs 1-59 as if fully set forth herein.

101.     Plaintiff Denise Robinson brings this cause of action on her own behalf and on behalf of the Illinois Subclass.

102.     The Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. 510/2, *et seq.*, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

103.     815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation," the person does any of the following: "(5) represents that goods or services have . . . uses, benefits or quantities that they do not have . . .; (7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another; . . . [or] (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

104.     Defendant engaged in unfair and deceptive acts in violation of 815 Ill. Comp. Stat. 510/2 when it misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Infants' Products, which has caused damage and injury to Plaintiff Denise Robinson and the Illinois Subclass. Plaintiff Denise Robinson and the Illinois Subclass were injured by Defendant's unfair and deceptive conduct at the time of purchasing Defendants' Infants' Products.

105.     Defendant represented, directly or indirectly, that Infants' Products were manufactured, developed, and designed to be used for infants, when it knew that the Children's Products were the same product, yet sold at a significantly lower cost.

106.   In marketing, advertising and labeling Infants' Products, Defendant made, and continues to make, false and misleading statements in order to induce consumers into purchasing Infants' Products on a false premise.

107.   In marketing, advertising and labeling Infants' Products, Defendant failed and continues to fail to make material disclosures, including a disclosure notifying consumers that Infants' Products is the same product as Children's Products.

108.   Defendant is aware that the claims that it makes about Infants' Products are false, misleading, without basis, and unreasonable.

109.   Defendant engaged in the deceptive conduct alleged above in order to induce the public to purchase the more expensive Infants' Products, instead of Children's Products.

110.   In marketing, advertising and labeling Infants' Products described above, Defendant knew or should have known that its representations and statements regarding the uses and characteristics of Infants' Products were false and misleading.

111.   Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described in this Complaint.

112.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a course of conduct repeated on hundreds, if not thousands, of occasions every day.

113.   Plaintiff Denise Robinson and the Illinois Subclass were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that Infants' Products has benefits which it does not; namely that it is more suitable and safer for infants than the Children's Products.

114.    Additionally, Defendant's use of various forms of advertising and marketing have deceived and are likely to continue deceiving the consuming public, in violation of the Illinois Consumer Fraud Act.

115.    Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

116.    Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff Denise Robinson and the Illinois Subclass at the point of purchase.

117.    Plaintiff Denise Robinson and the Illinois Subclass would not have purchased, or would have paid less for, Defendant's Infants' Products but for Defendant's material misrepresentations as described in this Complaint. Defendant intended Plaintiff Denise Robinson and the Illinois Subclass to rely on their deceptive acts when purchasing Defendant's Infants' Products.

**FOURTH CAUSE OF ACTION**
**Violation of The Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301 *et seq.***
**(On behalf of Plaintiffs and the Nationwide Class)**

118.    Plaintiffs hereby incorporate paragraphs 1-59 as if fully set forth herein.

119.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class. Upon certification, the Class will consist of more than 100 named plaintiffs.

120.    The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

121.    The Infants' Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

122. Plaintiffs and the Nationwide Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

123. Defendant is the "supplier" and "warrantor" of the Infants' Products within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

124. Defendant represented in writing that the Infants' Products were manufactured or designed for infants by prominently displaying the word "infants'" on the front-label packaging and the product information and price tags display next to Infants' Products on the store shelves.

125. These statements were made in connection with the sale of the Infants' Products and relate to the nature of the Infants' Products and affirm and promise that the Infants' Products are as represented and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

126. As alleged herein, Defendant breached the written warranty by selling consumers Infants' Products that were nothing more than Children's Products with the word "infants" prominently displayed.

127. The Infants' Products do not conform to Defendant's written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Consequently, Plaintiffs and the Nationwide Class have suffered injury and are entitled to damages in an amount to be proven at trial.

128. On June 16, 2020, Plaintiffs, on behalf of themselves and the Nationwide Class mailed a pre-litigation letter by certified mail, with return receipt requested, to Defendant notifying that the conduct, as alleged herein, violated the Magnuson-Moss Warranty Act.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(On behalf of Plaintiffs and the Nationwide Class)**

129. Plaintiffs hereby incorporate paragraphs 1-59 as if fully set forth herein.

130.    As part of each contract for the sale of Infants' Products, Defendant represented that the Infants' Products were manufactured or designed for infants by prominently displaying the word "infants'" on the front-label packaging and the product information and price tags display next to Infants' Products on the store shelves.

131.    Defendant's representations that represented to consumers that the Infants' Products were manufactured, developed, and designed to be used for infants constituted express warranties and became part of the basis of the bargain between Plaintiffs and the Nationwide Class, on the one hand, and Defendant, on the other.

132.    Defendant represented that Infants' Products were manufactured, developed, and designed to be used for infants to induce Plaintiffs and the Nationwide Class to purchase Infants' Products, and pay more for them than they otherwise would have had they known the truth.

133.    Plaintiffs and the Nationwide Class relied on Defendant's representations that Infants' Products were manufactured, developed, and designed to be used for infants, when it knew that the Children's Products were the same product, yet sold at a significantly lower cost.

134.    Plaintiffs and the Nationwide Class have performed all conditions precedent to Defendant's liability under the above-referenced contracts when they purchased the Infants' Products for their ordinary purposes.

135.    Defendant breached its express warranties about Infants' Products because they were nothing more than Children's Products with the word "infants" prominently displayed.

136.    As a result of Defendant's breach of express warranties, Plaintiffs and the Nationwide Class were damaged in the amount of the purchase price or the premium they paid for the Infants' Products, together with interest thereon from the date of purchase, in an aggregate amount that Plaintiffs will prove at trial.

137.    On June 16, 2020 a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and the other members of the Nationwide Class, sent a notice letter to Defendant which provided notice of Defendant's breach and demanded that Defendant correct, repair, replace, or otherwise rectify the breach complained of herein. The letter also stated that if Defendant refused to do so, a complaint would be filed seeking damages. Defendant failed to comply with the letter.

138.    Plaintiffs and the Nationwide Class seek actual damages and punitive damages for Defendant's breach of warranty, in an amount to be proven at trial.

139.    On June 16, 2020, Plaintiffs, on behalf of themselves and the Nationwide Class mailed a pre-litigation letter by certified mail, with return receipt requested, to Defendant notifying that the conduct, as alleged herein, breached the express warranty.

### SIXTH CAUSE OF ACTION
**Unjust Enrichment**
**(On behalf of Plaintiffs and the Nationwide Class)**

140.    Plaintiffs hereby incorporate paragraphs 1-59 as if fully set forth herein.

141.    Plaintiffs, on behalf of themselves and on behalf of the Nationwide Class, bring a common law cause of action for unjust enrichment.

142.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling Infants' Products while misrepresenting and omitting material facts.

143.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling Infants' Products at the expense of, and to the detriment or impoverishment of, Plaintiffs and the Nationwide Class, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

144.    Plaintiffs and the Nationwide Class conferred significant financial benefits and paid substantial compensation to Defendant for Infants' Products, which were not as Defendant represented them to be.

145.    Under common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by the Plaintiffs' and the Nationwide Class' overpayments.

146.    Plaintiffs and the Nationwide Class seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which the Plaintiffs and the Nationwide Class may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray for judgment as follows:

(a)    Certifying that the action may be maintained as a Class Action, and that the named Plaintiffs be appointed the Class Representatives and their counsel as Class Counsel;

(b)    Declaring that Defendant is financially responsible for notifying the members of the Classes of the pendency of this suit;

(c)    Declaring that Defendant has committed the violations of law alleged herein;

(d)    Providing for any and all injunctive relief the Court deems appropriate;

(e)    Awarding statutory damages in the maximum amount for which the law provides;

(f)    Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

(g)    Providing for any and all equitable monetary relief the Court deems appropriate;

933799.1                                    27

(h)       Awarding Plaintiffs' reasonable costs and expenses of suit, including attorneys' fees;

(i)       Awarding pre- and post-judgment interest to the extent the law allows; and

(j)       For such further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 3, 2020

*/s/ Andrew Shamis*
ANDREW J. SHAMIS, ESQ. (#101754)
ashamis@shamisgentile.com
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: (305) 479-2299

*/s/ Melissa S. Weiner*
MELISSA S. WEINER (#0387900)
mweiner@pswlaw.com
JOSEPH C. BOURNE (#0389922)
jbourne@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

*/s/ Scott Edelsberg*
SCOTT EDELSBERG, ESQ. (#100537)
scott@edelsberglaw.com
**EDELSBERG LAW, P.A.**
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Telephone: (305) 975-3320

*/s/ Rachel Dapeer*
RACHEL DAPEER, ESQ. (#108039)
Rachel@dapeer.com
**DAPEER LAW, P.A.**
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: (305) 610-5523
*Pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Proposed Class*